# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. WHITE,<br><br>            Plaintiff,<br><br>   v.<br><br>MARK N. PAZIN, et al.,<br><br>            Defendants. | 1:12-cv-00917-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' 12(b)(6) MOTION TO DISMISS<br><br>(ECF No. 30)<br><br>**THIRTY (30) DAY DEADLINE** |

## I.     Introduction

Plaintiff James E. White ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

On December 6, 2013, the Court dismissed Plaintiff's first amended complaint for failure to state a claim upon which relief may be granted under §1983. (ECF No. 13.) Judgment was entered accordingly. (ECF No. 14.) Plaintiff appealed the dismissal, (ECF No. 15), and the Ninth Circuit Court of Appeals vacated and remanded the case for further proceedings, finding the dismissal premature. (ECF No. 21.)

The Ninth Circuit held that Plaintiff's allegations "that he could not see his children because the jail did not permit visitation by minors under age 12" when liberally construed, were

"sufficient to warrant ordering [defendants] to file an answer." White v. Pazin, 587 F. App'x 366, 367 (9th Cir. 2014) (quoting Wilhelm v. Rotman, 680 F.3d 1113, 1116, 1123 (9th Cir. 2012)). Consequently, this Court ordered Plaintiff's first amended complaint be served on the Defendants. As a result, this action currently proceeds on Plaintiff's first amended complaint against Defendants Pazin, Blake, Cavallero, Scott, Thoreson, Blodgett, and the Merced County Sheriff's Administration, for the denial of visitation with his minor children, in violation of the First, Fifth, Eighth and Fourteenth Amendments. (ECF No. 12.)

On June 23, 2015, Defendants filed a motion to dismiss Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 30.) Plaintiff filed an opposition, (ECF No. 34), which he supplemented with a memorandum of points and authorities in support, (ECF No. 36).[1] Defendants filed a reply to Plaintiff's opposition. (ECF No. 38). The motion is deemed submitted. Local Rule 230(l).

## II.    Motion to Dismiss

### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). Nevertheless, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). A claim

---

[1]    Plaintiff also submitted a notice of errata, which the Court has reviewed. (ECF No. 37.)

upon which the court can grant relief must have facial plausibility. Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B.   Summary of Relevant Allegations in First Amended Complaint

Plaintiff is currently a state prisoner housed at Ironwood State Prison in Blythe, California. At the time of the events alleged in the complaint, Plaintiff was detained in the Merced County Jail, following his arrest on March 12, 2007. Plaintiff was housed as a pre-trial detainee in the Merced County Jail from March 12, 2007 until September 1, 2011.

About five months following Plaintiff's arrest, he learned that he could not visit with his minor children under the age of 12 years. On May 20, 2008, Plaintiff's visitation rights were suspended due to a rules violation matter. On June 8, 2008, Plaintiff filed a grievance form questioning the removal of his visitation rights. On June 11, 2008, a sergeant confirmed that Plaintiff's visitation privileges should not have been suspended.

On January 26, 2009, Plaintiff received a court order from the Merced County Superior Court to receive visits from his minor children. The visit was never given, although it was possibly denied due to the rules violation issue. Plaintiff filed a grievance on July 20, 2010 regarding the denial of his visitation rights that went unanswered; it was not forwarded by the officer who received it. A writ regarding Plaintiff's complaint of violations of his due process rights, Fifth Amendment right to family support, and right not to be subjected to cruel and unusual punishments, was denied by the Superior Court of California, County of Merced, for the failure to exhaust administrative remedies.

On March 23, 2011, Plaintiff received a reply to one or more of his grievances, written by a non-party sergeant, stating that Plaintiff should seek a more-recent court order to see his children. On April 7, 2011, Plaintiff sent a grievance to Defendant Cavallero questioning the right of his minor children to visit and the policies being used to deny a detainee his right to be a father to his children. Plaintiff did not receive a reply to this grievance.

///

On April 11, 2011, Plaintiff received a second court order from the Merced County Superior Court to receive a visit from his minor children. Later, on May 11, 2011, Plaintiff received a memo from the desk of Defendant Pazin (authored by a Sergeant Lopez, a non-party) stating that the court order for visitation might not be adhered to because of a Merced County Jail rule that prohibited children under the age of 12. On May 12, 2011, Defendant Blodgett, Defendant Pazin, and Sergeant Lopez denied Plaintiff's minor children the visit authorized and ordered by the Merced County Superior Court. The stated reason for the denial was the safety and security of the institution and the safety of the children. The Merced County Jail does not allow contact visits of any kind and all visits are behind glass partitions.

Plaintiff claims a violation of the First, Fifth, Eighth and Fourteenth Amendments. Each Defendant is sued in their individual and official capacity. Plaintiff seeks declaratory and injunctive relief and damages.

### C.   Defendants' Motion to Dismiss

Defendants argue that Plaintiff has not alleged sufficient facts to constitute a cognizable claim, because Supreme Court and Ninth Circuit precedent clearly established at the time of the events at issue that inmates do not enjoy an absolute right to receive visits while incarcerated, even from family members. Defendants further argue that the policy imposed in this case is reasonably related to legitimate penological interests, as Plaintiff pleaded that the purpose of the policy disallowing visits with children under 12 is for the safety and security of the institution and the children's safety. Thus, Plaintiff's First Amendment right of association claim must fail.

Defendants also argue that because Plaintiff was a pre-trial detainee at the time of the events at issue here, his claims are not analyzed under the Eighth Amendment, but arise from the Fourteenth Amendment. Defendants contend that Plaintiff's Fourteenth Amendment due process claim must fail because he has no protected liberty interest in visitations with his minor children. Regardless, Plaintiff also cannot meet the standards for an Eighth Amendment claim, since the visitation restrictions do not amount to "the denial of the minimal civilized measure of life's necessities." (ECF No. 30-1, p. 15 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).) Therefore, the imposition of the restriction is not cruel and unusual punishment.

Next, Defendants argue that the claims against the individual Defendants in their official capacities must be dismissed and the County of Merced be substituted, pursuant to <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978). Also, Defendants argue that the individual Defendants sued in their individual capacities are entitled to qualified immunity, as Plaintiff has not alleged a constitutional violation, and there was no clearly established right to visits with children under 12 at the time of the events at issue. As to Defendant Merced County Sheriff's Department, erroneously sued as Merced County Sheriff's Administration, Defendants argue that this entity is not a "person" subject to suit under section 1983 as a matter of law. Thus, that Defendant must be dismissed.

Regarding the relief Plaintiff seeks, Defendants argue that Plaintiff's claim for injunctive relief is moot, since he is no longer housed at the Merced County Jail. Also, Defendants assert Plaintiff should not be granted leave to amend, because the defects in the first amended complaint cannot be cured.

### D.     Plaintiff's Opposition to the Motion to Dismiss

Plaintiff opposes the motion to dismiss, and in the alternative, seeks leave to amend. In support, he argues that he states a claim for the violation of his First and Fourteenth Amendment rights, because the ban on child visitations alleged in his first amended complaint is an excessive response to the limited risks presented by such visitations. The ban causes a serious deprivation of an inmate's ability to maintain a relationship with his child, and it is in the interest of the state to promote the relationship between parent and child. Plaintiff further argues that a parent-child relationship is a fundamental right, and thus the loss of visitation rights as a pretrial detainee violates his rights. Plaintiff further contends that he has sufficiently pleaded that the policy is not reasonably related to a legitimate governmental objective. Plaintiff elsewhere argues that whether the policy is justified for safety and security reasons is a factual dispute. Plaintiff relies on various state court and out-of-circuit authorities in support of these contentions.  (ECF No. 35, pp. 4, 8, 10, 11 (citing California Court of Appeals and Second, Third, Fourth, and Fifth Circuit Court of Appeals authorities).)

///

To Defendants' argument that there was no constitutional violation in this case, Plaintiff asserts that he has sufficiently pleaded that he was in fact denied the right to visit with his children, despite the order by the Merced County Superior Court that he could have such visitations. The relevant order was attached to Plaintiff's first amended complaint, (ECF No. 12, p. 49), and is re-attached to the opposition.

Regarding Defendants' argument that the right to receive visits from children is not clearly established, Plaintiff argues that Defendants' argument is flawed because the precedent relied upon applied to prisoners, whereas he was a pretrial detainee. He argues that depriving pretrial detainees of rights to a greater extent than necessary to ensure his appearance at trial and to ensure the security of the jail constitutes conditions of confinement worse than that for prisoners, which violates his due process rights.

### E.        Defendants' Reply in Support of the Motion to Dismiss

Defendants argue that Plaintiff's opposition does not negate their arguments. Defendants admit that Plaintiff alleges he was denied the opportunity to see his children while detained at Merced County Jail, but they assert that this did not constitute any constitutional rights violation. Further, Defendants argue that the relevant Supreme Court and Ninth Circuit case law here contradicts Defendants' out-of-circuit authorities, and that Plaintiff's California authorities did not address visitation restrictions or their related security concerns in a jail. Rather, Plaintiff cited family law cases and cases regarding other issues which are not relevant to this action. Defendants also argue that Plaintiff's citations to Ninth Circuit case law regarding the fundamental liberty interest in the companionship and society of a parent with his or her child did not concern visitation restrictions in a jail, and thus failed to analyze the relevant institutional safety and security concerns in this case.

Defendants also argue that regarding the necessity of security measures in jails for pretrial detainees, courts should defer to the expertise of jailers, unless it appears that the measure is punitive or there is substantial evidence that the measure is an unreasonable or exaggerated response to security requirements. Here, Defendants contend, since the policy at issue promotes internal security and protects children from harm, it is a reasonable response to

1    the concerns at issue here, and is neither exaggerated nor punitive. Further, although Defendants

2    admit that Plaintiff was a detainee at the time of the events at issue, they argue that the

3    governmental objectives of safety and security are the same regardless of whether a prisoner is

4    being held for pre-trial or post-trial purposes. Defendants note that Plaintiff agrees that the

5    individual Defendants were acting pursuant to a policy here, and thus even assuming a

6    constitutional violation occurred, those Defendants are entitled to qualified immunity since those

7    Defendants reasonably believed such restrictions were valid and lawful.

8          Finally, Defendants argue that since Plaintiff did not dispute (1) that the individual

9    Defendants in their official capacity are not "persons" amenable to section 1983 claims; (2) that

10   the Merced County Sheriff's Department is not a proper defendant; and (3) that his claim for

11   injunctive relief is moot, he has conceded those issues.

12         **F.**     **Analysis**

13            **1.**     **Fifth Amendment and Eighth Amendment**

14         Plaintiff invokes the Fifth Amendment in arguing that he was deprived of due process

15   and his "right to family support as a husband and father." (ECF No. 12, p. 6.) The Court

16   construes this as a claim for the violation of his substantive due process rights.

17         Plaintiff's claims are asserted against a local sheriff's department and various jail

18   officials, but the Fifth Amendment's due process clause only applies to the federal government.

19   Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (quoting Betts v. Brady, 316 U.S. 455,

20   462, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942)) ("Due process of law is secured against invasion by

21   the federal Government by the Fifth Amendment and is safe-guarded against state action in

22   identical words by the Fourteenth."); see also Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th

23   Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of

24   due process, while the Fourteenth Amendment explicitly prohibits deprivations without due

25   process by the several States: '*nor shall any State* deprive any person of life, liberty, or property,

26   without due process of law.' " (quoting U.S. CONST. amend. XIV) (emphasis in original)).

27   ///

28   ///

Since Plaintiff is not proceeding against federal actors, he is unable to state a cognizable claim for violation of his rights under the Fifth Amendment, and the Court recommends that his cause of action under the Fifth Amendment should be dismissed without leave to amend.

Plaintiff also asserts claims under the Eighth Amendment. (ECF No. 12, pp. 5, 7.) The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). In this case, Plaintiff alleges that he was a pre-trial detainee held at the Merced County Jail when he was deprived of his constitutional rights. Claims brought by pretrial detainees objecting to the conditions and circumstances of their confinement are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003). Therefore, Plaintiff's claim is properly analyzed under the Fourteenth Amendment, and the Court recommends that his cause of action under the Eighth Amendment should also be dismissed without leave to amend.

## 2. Official Capacity Claims, Sherriff's Department, and Injunctive Relief

Next, the Court analyzes Defendants' arguments that Plaintiff did not directly dispute in his opposition. Regarding Plaintiff's claim for injunctive relief, he affirmatively pleaded that he is a state prisoner in the custody of the California Department of Corrections and Rehabilitation who is no longer being detained at Merced County Jail, as of September 1, 2011. The Court agrees with Defendants that Plaintiff's request for injunctive relief is therefore moot, and recommends that this claim should be dismissed without leave to amend. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Plaintiff also does not dispute Defendants' argument that neither the individual Defendants in their official capacity, nor the Merced County Sheriff's Department, are considered "persons" within the meaning of section 1983. 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). "The term 'persons' encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Anderson v. Sacramento Police Dep't, No. 216-CV-0527-TLN-GGH, 2016 WL 3091162, at *4 (E.D. Cal. June 2, 2016) (citing Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996)). However, the term 'persons' does not encompass municipal departments, such as police or sheriff's departments, that are merely agencies of a municipality. Id.; see also United States v. Kama, 394 F.3d 1236, 1239 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of Section 1983.").

Furthermore, claims against the sheriff and other sheriff's department employees, when functioning as the administrators of a local jail, are claims against county actors. Streit v. County of Los Angeles, 236 F.3d 552, 564–65 (9th Cir. 2001), cert. denied, 534 U.S. 823, 122 S. Ct. 59, 151 L. Ed. 2d 27 (2001). Claims against such public employees in their official capacities are, in effect, suits against their employer, and thus claims against one or more county actors in their official capacity should be dismissed, and may be treated as a claim against the county. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Butler v. Elle, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002).

In this case, Plaintiff brings claims against Defendants Pazin, Blake, Cavallero, Scott, Thoreson, and Blodgett in their individual and official capacities. The Court agrees with Defendants that the claims against them in their official capacities should be dismissed, and the County of Merced should be substituted as a defendant. Further, although the County of Merced is a proper defendant, the Merced County Sheriff's Department is not, and thus the Merced County Sheriff's Department (erroneously sued as the "Merced County Sheriff's Administration), should also be dismissed from this action. The claims against the individual jail official Defendants in their individual capacities are addressed further below.

///

9

3.       **Claims Against Individual Defendants in their Individual Capacities**

Defendants' arguments for dismissing Plaintiff's claims against the individual jail official Defendants in their individual capacities are grounded in qualified immunity. Defendants first assert that there is no constitutional right for prisoners to have visitations with their minor children, and thus Plaintiff has not stated any claim against these individual jail official Defendants. Defendants further argue that, even assuming such a right exists, the individual Defendants are entitled to qualified immunity because any such right was not clearly established at the time of the events at issue.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A court considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 535 U.S. 194, 201 (2001)). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Pearson, 555 U.S. at 236 (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the nonmovant. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (citations omitted). A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citing Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent,

the court should look to all available decisional law, including the law of other circuits and district courts. <u>See</u> <u>id</u>. Cases decided after the incidents at issue which make a determination regarding the state of the law at the time of the incident are persuasive authority. <u>Osolinski</u>, 92 F.3d at 936.

Defendants urge this Court to find there was no constitutional violation here, nor any violation of any clearly established right, by relying on the Supreme Court and Ninth Circuit precedent as outlined in a 2010 Ninth Circuit decision, <u>Dunn v. Castro</u>, 621 F.3d 1196 (9th Cir. 2010). <u>Dunn</u> concerned a claim that from January 29, 2004 to February 18, 2005, California prison officials wrongfully prohibited inmate Dunn from receiving visits from his minor children based on a rules violation. <u>Id</u>. at 1197. The <u>Dunn</u> court examined Supreme Court and Ninth Circuit precedent at the time of the visitation denials, and found that the case law "clearly established that prisoners do not enjoy an absolute right to receive visits while incarcerated, even from family members." <u>Id</u>. at 1201.  On the other hand, the <u>Dunn</u> court also found that "[t]he relationship between a father or mother and his or her child, even in prison, merits some degree of protection." <u>Id</u>. at 1205.

Ultimately, the court declined to articulate more precisely the existence and scope of a prisoner's right to visitations from his or her children while incarcerated. Instead, the Ninth Circuit found that the district court should have granted qualified immunity to the prison official defendants in that case because the right that inmate Dunn alleged was not clearly established by 2004. <u>Dunn</u>, 621 F.3d at 1203-04. That is, inmate Dunn was specifically challenging a temporary deprivation of his visitation privileges with his children due to a disciplinary decision, where the prison officials had grounds for concluding that Dunn had violated a prison rule related to the safety of children. <u>Id</u>. (discussing that inmate Dunn was disciplined for participating in a sexually-oriented telephone call with his wife while his child was on the line). Since the right inmate Dunn claimed was not clearly established under these circumstances by 2004, the court held that a reasonable officer could have believed that their actions were lawful, and thus the prison official defendants were entitled to qualified immunity. <u>Id</u>. at 1205 (quoting <u>Friedman v. Bourcher</u>, 580 F.3d 847, 858 (9th Cir. 2009). Notably, the <u>Dunn</u> court stated that "[o]ur

1  conclusion might be different if Dunn were presently subject to a blanket ban on his visitation

2  privileges." Id. at 1204-05 (citing Overton v. Bazzetta, 539 U.S. 126, 137, 123 S. Ct. 2162, 156

3  L. Ed. 2d 162 (2003)).

4       In this case, Plaintiff's first amended complaint was previously dismissed on the grounds

5  that he did not have any clearly established constitutional right to receive visits from his children,

6  based on Dunn. (ECF No. 13, p. 5.) In reversing that judgment, the Ninth Circuit held that

7  Plaintiff "alleged that he could not see his children because the jail did not permit visitation by

8  minors under age 12," and suggested that this distinguished this case from Dunn, since Plaintiff

9  challenges the jail's "blanket ban" on his visitation rights as a matter of law. White v. Pazin, 587

10  F. App'x 366, 367 (9th Cir. 2014) (citing Dunn, 621 F.3d at 1205). Therefore, in determining

11  whether qualified immunity applies, this Court is required to consider applicable precedent

12  regarding Plaintiff's constitutional right as the Ninth Circuit has found he articulates it in this

13  case—that he was denied visitations from his children due to the jail's policy banning children

14  under the age of 12.

15       This Court now evaluates in depth whether such right was clearly established at the time

16  of the Defendants' alleged misconduct, under the second prong of  Pearson v. Callahan, 555 U.S.

17  223, 232 (2009). In Dunn, the Ninth Circuit analyzed Supreme Court and Ninth Circuit

18  precedent on inmate visitation issues, as well as relevant law from other jurisdictions. Dunn,

19  although distinguishable from this case as explained above, is nevertheless instructive. The Ninth

20  Circuit was careful to state that both it, and the Supreme Court, had not "h[e]ld or impl[ied] that

21  incarceration entirely extinguishes the right to receive visits from family members." Dunn, 621

22  F.3d at 1205 (citing Overton, 539 U.S. at 131-32). The Supreme Court had also stated that a

23  permanent or excessively long deprivation of all visitation privileges, or a restriction that was

24  "applied in an arbitrary manner to a particular inmate," may violate an inmate's constitutional

25  rights. Overton, 539 U.S. at 137. Regardless, the Dunn court thought that the Supreme Court had

26  shown "hesitation in articulating the existence and nature of an inmate's right to receive visits

27  from family members while in prison…." 621 F.3d at 1202 (citing Overton, 539 U.S. at 129-30).

28  ///

Rather than clearly articulating any right of prisoners to receive visits from family members, the Supreme Court focused on whether certain restrictions on such visitations were constitutionally permissible. The Court in Overton upheld regulations imposing a number of visitation restrictions, including restrictions requiring visitors under age 18 to be accompanied by an appropriate adult, or only allowing visitors under age 18 who are the prisoner's child, stepchild, grandchild, or sibling. 539 U.S. at 136. The Overton court emphasized, in upholding such regulations, that the rights of prisoners must be carefully balanced with the "substantial deference" courts must accord "to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. at 132.  It does not appear the Supreme Court has had occasion to address these issues any further since its decision in Overton.

Regarding relevant Ninth Circuit precedent, as discussed above, the Ninth Circuit in Dunn declined to define any constitutional right for prisoners to visitations from their children. The Dunn court also noted that it had declined to recognize other constitutional rights for inmates related to visitations. 621 F.3d at 1202-03 (citing Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) (no right to contact visits); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of prisoner's claim challenging regulation that denied him visits from persons other than his immediate family)). Subsequent to Dunn, the Ninth Circuit has issued a couple of memorandum opinions regarding inmates' visitations with minors. These decisions do not contain any clear articulation of a constitutional right for prisoners to visitations from their children. Instead, these decisions affirmed lower courts that found there was no violation of an inmate's constitutional rights based on restricted visitations. See Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (restriction on contact visitation with minor children did not violate First Amendment or substantive due process); Barno v. Ryan, 399 F. App'x 272 (9th Cir. 2010) (inmate's alleged injury of temporary restrictions on his visitations with minors was not a sufficient injury or threat of harm to substantiate deliberate indifference claim).

///

13

1       This Court has not located, nor have the parties cited, any Supreme Court or Ninth

2 Circuit precedent concerning a policy that is comparable to the policy Plaintiff challenges here.

3 Plaintiff has cited some decisions from other jurisdictions that have addressed similar policies

4 banning minors from visiting inmates, and the Court has found a few additional relevant cases.

5 These courts have come to different conclusions regarding whether such policies may have

6 violated any inmate's constitutional rights.

7       A few courts have recognized a constitutional violation based on a policy banning minors

8 from visiting inmates. In a 1979 decision from a federal district court in New Jersey, that court

9 determined that a jail's regulations effectively banning all minor children from seeing their

10 incarcerated parents was a due process violation. Valentine v. Englehardt, 474 F. Supp. 294. The

11 jail housed both detainees and convicted inmates, and all visits were non-contact. Id. at 298. No

12 children under 18 years of age were allowed to visit except with the sheriff or warden's

13 permission, which was only given in extraordinary circumstances, such as the death of the

14 child's only other living parent. Id. The defendants in that case contended that the restrictions

15 banning children were necessary to "protect the 'best interests' of the children." Id. at 299. The

16 court found the policy was unconstitutional, since it was based on "the judgment of the jailer that

17 it is not in the best interest of the children to visit their parents while those parents are in jail,"

18 rather than any legitimate penological concerns. Id. at 301.[2]

19       In 1985, the Fifth Circuit in Morrow v. Harwell, also held that a county jail's policy

20 preventing visits by minors was unlawful, although the county in that case did not "seriously

21 defend its policy" and instead focused on arguing that the matter was moot because the policy

22

---

23 [2]    In a similar case, McMurry v. Phelps, another federal district court considered a policy banning children under 14 years of age from visiting their parents based on the jailer's

24 determination that "children of that age should not see their parents in a jail environment." 533 F. Supp. 742 (W.D. La. 1982). The district court found that policy was improper, since it was not

25 based on any valid penological objectives. Id. at 764. The court also stated, without support, that basic visitation is a right protected by the First Amendment freedom of association. Id.

26

27       A few years later, however, the Fifth Circuit expressly overruled McMurry to the extent it was based on the finding that the First Amendment right of association guaranteed visitation

28 rights to prisoners. Thorne v. Jones, 765 F.2d 1270, 1272 n.6 (5th Cir. 1985).

had recently changed. 768 F.2d 619, 626-27. In 1973, a federal district court in Wisconsin considered a state prison policy banning children from visiting inmates held in segregation. Mabra v. Schmidt, 356 F. Supp. 620 (W.D. Wis.). Inmates in the general population were allowed to visit with their children, but defense counsel argued that the segregation building was "patently not a place where children should be allowed to visit." Id. at 623. The court ruled that the defendants did not show the policy was rationally related to a legitimate state interest, and the difference in treatment between the classes of inmates violated the plaintiff's rights to due process and equal protection.

In Nicholson v. Choctaw County, Ala., a federal district court in Alabama found that pretrial detainees held in a county jail had a right to reasonable visitations from their children, unless the detainee is "diseased or unless there is a reason to believe that he is a threat to jail security." 498 F. Supp. 295, 310, 314 (S.D. Ala. June 30, 1980). That court relied on Valentine, and also held that visitation restrictions which are greater than necessary to ensure jail security violate the First Amendment, without further elaboration. Id. at 310.

A California state court in 1980 determined that a county jail policy prohibiting children from visiting their pretrial detainee parents violated the detainees' constitutional rights of association and privacy. In re Smith, 112 Cal. App. 3d 956, 964, 169 Cal. Rptr. 564, 567 (2d Dist.). Although the jailors raised numerous safety and security-based concerns in support of their policy, the court found that the ban was an "excessive response to the limited risk presented by child visitation in these particular facilities." Id. at 969. A significant amount of evidence was put forward regarding the visiting areas in the subject facility, including how child visitors are handled and matters concerning security and safety. See id. at 962-63. The state court acknowledged the United State Supreme Court's admonition to courts to defer to the expertise of correction officials on matters of discipline and security. See id. at 968. Based on its finding that the relationship between a parent and child is a fundamental right, however, the state court determined that even a good faith claim of maintaining jail security which would separate a parent and child for long periods of time denies the constitutional rights of association and privacy inherent in the parent and child relationship. See id.

In a 1995 decision, a Mississippi federal district court held that an evidentiary hearing was necessary to determine whether a policy banning children under age 12 from visitations with detainees was "an exaggerated and overbroad response to security concerns under the factual circumstance of this case."  Hallal v. Hopkins, 947 F. Supp. 978, 997 (S.D. Miss.). That court discussed some precedent stating that an "inmate's desire to touch and hold family members … is a natural human desire and that deprivation of it is serious." Id. at 996 (quoting Jones v. Diamond, 636 F.2d 1364, 1377 (5th Cir. 1981)).

On the other hand, several courts have found that certain policies banning children from visiting inmates were not improper, and several of them have also declined to find any constitutional right to visitations with family members. In a 1986 decision, a federal district court in Pennsylvania held that a ban preventing children from visiting prisoners housed in maximum security did not violate the inmate-plaintiff's rights, as it was neither unreasonable nor discriminatory. Ford v. Beister, 657 F. Supp. 607, 611 (M.D. Pa.). The court noted that to visit such inmates, the children would have to "proceed to the virtual center of the prison," which would compromise the institution's internal security. Id. at 611. The court also approvingly quoted a holding from the Fifth Circuit that incarcerated persons "maintain no right to simple physical association—with their parents or with anyone else—grounded in the first amendment." Id. (quoting Thorne, 765 F.2d at 1274). The court distinguished cases such as Valentine because they involved pretrial detainees. Ford, 657 F. Supp. at 612 ("It can be argued that a detainee, awaiting trial, has a more fundamental right to visitation than a prisoner who already has been convicted and imprisoned.").

A New York state court determined in 1991 that there was no fundamental right to visitations under that state's constitution. Victory v. Coughlin, 165 A.D.2d 402, 404, 568 N.Y.S.2d 186, (N.Y. App. Div. 3d Dep't). Specifically, that court found that visitations for convicted inmates are a privilege rather than a right, and thus inmates have no legitimate expectation of a protected interest in visitations. Id. at 404-405. That court also distinguished cases involving pretrial detainees, stating that there is a "clear distinction" between the rights of such detainees, versus inmates who are incarcerated post-conviction. Id

16

In a 1994 decision, an Iowa federal district court held that although prohibitions on visitations by children *may* violate an inmate's constitutional rights, a regulation could nevertheless be valid if it was reasonably related to a legitimate penological interest. Navin v. Iowa Dep't of Corrections, 843 F. Supp. 500, 504 (N.D. Iowa 1994). In that case, the restriction that a visitor under age 18 must be accompanied by a parent or legal guardian was found to be reasonably related to the need for security and tranquility at the institution.

A Utah federal district court determined in a 1997 decision that inmates do not have any due process right to visitation with children under eight years of age, and that the ban on such visitations was rationally related to safety and security concerns. N.E.W. v. Kennard, 952 F. Supp. 714, 719 (D. Utah 1997). The court further found there was no denial of equal protection rights based on the ban, because it was not shown to be arbitrary. Id. at 720.

More recently, in a 2012 decision, the Second Circuit in Mills v. Fisher analyzed a claim based on the denial of an inmate's visit with his sixteen-year-old son in 2009. 497 F. App'x 114. That court assumed for the purposes of its analysis that an inmate *may* have a right to visitations protected by the First Amendment under Overton, but held that such a right could be subject to reasonable restrictions. Id. at 116-17. The plaintiff did not state a claim in that case, since the institution reasonably required proper identification from visitors, which the inmate's son admittedly did not have. Id. at 117.

In 2015, the Sixth Circuit considered a claim by a detainee that a jail policy barring visits by minors to "high security" inmates violated that detainee's First, Eighth, and Fourteenth Amendment rights. Nouri v. Cty. of Oakland, 615 F. App'x 291 (6th Cir. 2015). The detainee-father was denied visitations with his children while he awaited a re-trial, from May 2008 through April 2011. The Sixth Circuit relied on Overton, and focused on whether the restriction had a rational relation to a legitimate penological interest, rather than whatever rights may exist in such a situation. The court ultimately upheld the policy, finding it was limited and focused on the most troublesome inmates, rationally addressed internal security concerns and protections of minor visitors from injury, and that the inmate had reasonable, alternative means to communicate with his children, such as by relaying messages through his spouse. Id. at 298-99. The fact that

1    <u>Overton</u> did not involve pretrial detainees was not persuasive to the Sixth Circuit, because it

2    found that the Supreme Court has applied the same rational basis review to limitations on

3    visitations with detainees as it has on limitations for visitations with convicted inmates. <u>Id</u>. at

4    299.

5           This relevant Supreme Court and Ninth Circuit precedent, as well as relevant case law

6    from other jurisdictions, does not show that the right Plaintiff asserts in this case was clearly

7    established when he was denied visitations with his minor children as a pretrial detainee. There is

8    no binding precedent from the Supreme Court or Ninth Circuit on the matter. At best, <u>Overton</u>

9    and <u>Dunn</u> suggests that prisoners may enjoy some right to visitations from their children, and

10   that a complete ban on visitations by minors may violate that right, but the question remains

11   unsettled.

12          To the extent that other courts from other jurisdictions have addressed the issue, they

13   have arrived at differing outcomes based on differing reasoning and the variety of circumstances

14   presented. Those courts who have considered the issue have expressly disagreed regarding the

15   fundamental issue of whether there is any constitutional basis for asserting a right to visitations

16   with minor children. Even those courts who have found such a right disagree on what provision

17   of the Constitution supports that right.

18          Some courts, for example, find that visitations between inmates and their children are

19   protected by the constitutional rights of association and privacy under the First Amendment. <u>See</u>

20   <u>In re Smith</u>, 112 Cal. App. 3d at 968-69 (United States and California Constitutions). Other

21   courts, on the contrary, convincingly reason that visitation rights are not the type of association

22   rights protected by the First Amendment, since freedom of association as articulated by the

23   Supreme Court is rooted in free speech, the advancement of beliefs and ideas, and the advocacy

24   of points of view, rather than any right to see and visit with another person. <u>See</u> <u>Thorne</u>, 765 F.2d

25   at 1273-74 ("[A]ny first amendment right to mere physical association is so attenuated from the

26   true protections of that amendment as to not be deserving of the usual strictures placed on

27   abridgment of first amendment rights including restriction only by the least drastic means.").

28   Still other courts that have addressed a right to visitations with minor children have simply

1   assumed for the sake of argument that it may exist, and instead focused on whether the

2   restrictions imposed upon the visitations were reasonable.

3          The courts have also disagreed on whether any constitutional right to visitations from an

4   inmate's minor children, to the extent it exists, should be analyzed differently for pretrial

5   detainees as compared to convicted inmates. Some courts have found that institutional safety and

6   security are equally pressing concerns regardless of the inmates' status, by relying on the

7   principle announced by the Supreme Court in Block v. Rutherford, 468 U.S. 576, 587, 104 S. Ct.

8   3227, 3233, 82 L. Ed. 2d 438 (1984), that "[t]here is no basis for concluding that pretrial

9   detainees pose any lesser security risk than convicted inmates." See e.g., Nouri, 615 Fed. Appx.

10  (citing Block for this principle). Other courts have found that there must be a distinction

11  regarding the freedoms and privileges enjoyed by an inmate depending on whether they have

12  been convicted or still enjoy the presumption of innocence.

13         In summary, the relevant law does not show there was any clearly established right

14  protecting an inmate from policies banning visitations with his minor children at the time of the

15  events at issue, particularly when, as Plaintiff alleges here, the stated purpose of the policy

16  enforced by the officials was to protect "the Safety and Security of the institution and the safety

17  of the children." (First Am. Compl., ECF No. 12, ¶ 34.) To the extent a policy enacted with such

18  purposes has been subject to constitutional scrutiny, most courts have held that it can survive

19  such scrutiny if it is in fact a reasonable response to such concerns. The claims Plaintiff asserts in

20  this case cannot be described as "beyond debate," and thus clearly established, at the time that

21  the policy at issue here prevented him from having visitations with his children. See Carroll, 135

22  S. Ct. at 350. Accordingly, the Court agrees with Defendants that their motion to dismiss with

23  respect to the claims against the individual officials in their individual capacity should be

24  granted, on qualified immunity grounds, because the right Plaintiff asserts was not clearly

25  established at the time of his alleged constitutional deprivations.

26         **4.      Monell Claims Against County of Merced**

27         Finally, the Court turns to the sole remaining claims Plaintiff has asserted in this action:

28  the violation of his First and Fourteenth Amendment rights by the County of Merced based on

the policy at issue here. Defendants assert that under <u>Overton</u> and <u>Dunn</u>, Plaintiff has no absolute right to visitations with his family members while incarcerated, and thus there are no First Amendment or Fourteenth Amendment violations here. However, Plaintiff does not assert an absolute right to visitations with his minor children, but rather asserts that the policy here was not reasonably related to legitimate penological objectives, under the facts and circumstances he has alleged. Plaintiff acknowledges in his first amended complaint that the stated purposes of the policy were to protect institutional safety and security and the safety of children. He claims that the policy was not a reasonable response to these concerns. Among his allegations are that there were little risks of safety and security because all visits at the Merced County Jail are non-contact; that is, the inmates and their visitors are fully separated by glass partitions. (First Am. Compl. ¶ 39.) Thus, the visitations would not have resulted in any risk of physical harm to the children, nor any possibility of security violations, such as the passing of contraband to the inmates using the children. (<u>Id</u>.) He further alleges that despite these non-existent risks, the policy was employed to deny him visitations with his children, causing him great mental and emotional hardship. (<u>Id</u>. at ¶ 42.)

As discussed at length above, the Supreme Court and the Ninth Circuit have held that incarceration does not terminate a person's rights, whatever they may be, to familial association. <u>Overton</u>, 539 U.S. at 132 ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners."); <u>Dunn</u>, 621 F.3d at 1205 ("[W]e do not hold or imply that incarceration entirely extinguishes the right to receive visits from family members."). Although incarceration necessarily brings with it limitations on a person's rights, particularly those of association, a prisoner nevertheless retains those rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974). In cases such as this in which a visitation policy is being challenged, the Supreme Court and the Ninth Circuit have inquired into whether the regulation is reasonably related to legitimate penological interests under the facts and circumstances of the case. <u>Overton</u>, 539 U.S. at 132 (citing <u>Turner v. Safley</u>, 482 U.S. 78,

89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)); Shakur v. Schriro, 514 F.3d 878, 884 (citing Turner, 482 U.S. at 89).

Under the Supreme Court's decision in Turner, the four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests are:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) Whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

Shakur, 514 F.3d at 884 (quoting Turner, 482 U.S. at 89–90). Each of these inquiries is heavily fact-based, and cannot be resolved merely on the allegations of Plaintiff's pleading.

Defendants assert that the challenged policy was critical to the safety and security of the jail, as well as the protection of children from physical harm or injury during visitations, and that these goals are among the most legitimate of penological goals. The Court agrees that institutional safety and security concerns are among the most fundamental and legitimate concerns of correctional institutions and jails. However, the record in this case is absent of sufficient factual detail to make a determination that the policy here was rationally related to the stated penological goals underlying the policy. Since it is premature to make this determination at this stage, the Court recommends that the motion to dismiss on this basis be denied, and Plaintiff's claims against the County of Merced be allowed to proceed. See Dunn, 621 F.3d at 1205 n.7 (application of the Turner factors would be premature at the Rule 12(b)(6) stage) (citing Shakur, 514 F.3d at 887-88; Ward v. Walsh, 1 F.3d 873, 878-79 (9th Cir. 1993)).

21

**III.     Conclusion and Recommendation**

Since not all parties have consented to magistrate judge jurisdiction, the Court orders the Clerk of the Court to assign this action to a district judge.

Further, for the reasons stated above, it is HEREBY RECOMMENDED that:

1.     Defendants' motion to dismiss the first amended complaint under Rule 12(b)(6), (ECF No. 30), should be granted in part and denied in part;

2.     Plaintiff's claims under the Fifth and Eighth Amendment should be dismissed, without leave to amend;

3.     Plaintiff's claim for injunctive relief should be dismissed, as moot, without leave to amend;

4.     Plaintiff's claims against Defendants Blake, Cavallero, Scott, Thoreson, and Blodgett in their official capacities, and the Merced County Sheriff's Department, should be dismissed for failure to state a claim, and the County of Merced should be substituted as a defendant;

5.     Plaintiff's claims against Defendants Blake, Cavallero, Scott, Thoreson, and Blodgett in their individual capacities should be dismissed on the grounds that they are entitled to qualified immunity; and

6.     This case should proceed on Plaintiff's claims against the County of Merced for the violation of the First and Fourteenth Amendment based on the policy at Merced County Jail denying visitations with minors under age 12 to pretrial detainees.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendation, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

///

///

The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 19, 2016**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE